UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------X

KENNETH SMITH,

                           Plaintiff,            05 Civ. 2897

-against-                                         OPINION

DONNA M. MASTERSON; GLENN S. GOORD;
WILLIAM E. PHILLIPS; NURSE ADMINISTRATOR(S)
& FACILITY HEALTH SERVICES 9FHSD0 DIRECTORS
and AMERICANS WITH DISABILITIES ACT
PROGRAM COMPLIANCE OFFICERS AT 12 N.Y.
STATE DEPT. OF CORRECTIONAL SERVICES (DOCS)
FACILITIES (JOHN DOE/JANE ROES # 1-39);
JOHN SERHAN, BYRON RODAS, KEITH P. WALSH,
ADIRONDACK AUDIOLOGY ASSOCIATIONS, P.C.;
VENKA RAMANI, M.D., WESTCHESTER MEDICAL
CENTER, ET AL.,



                           Defendant(s).

----------------------------------------------X

A P P E A R A N C E S:


     Pro Se

     KENNETH SMITH (95-A-2029)
     Clinton Correctional Facility Annex
     P.O. Box 2002
     Dannemora, NY   12929


     Attorneys for Defendants

     ANDREW M. CUOMO
     Attorney General of the State of New York
     120 Broadway
     New York, NY   10271
     By: Neil Shevlin, Esq.

**Sweet, D.J.**

Defendants Donna D'Aloia ("D'Aloia"), Commissioner Brian Fisher ("Fisher"), Robert Raymond ("Raymond"), Byron Rodas ("Rodas"), Robert Ercole ("Ercole") and Westchester County Medical Center ("WCMC") (collectively, the "Defendants") have moved for summary judgment pursuant to Rule 56, Fed. R. Civ. P. to dismiss the complaint of plaintiff Kenneth Smith ("Smith" or the "Plaintiff"). For the reasons set forth below, the motion is granted, and the complaint dismissed.[1]

## Prior Proceedings

This action was brought by Smith by a complaint dated January 31, 2005 and filed on March 16, 2005 pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq. ("Rehab. Act"), various constitutional provisions, and several state law claims, in connection with the alleged failure by the defendants to provide Plaintiff with reasonable accommodations for his alleged hearing impairment.

---

[1] Defendant Dr. Venkat Ramani ("Ramani") has not appeared in this action. However, by virtue of the findings below, no dispute of material fact precludes entry of judgment against Smith as to Ramani.

1

The Defendants (other than WCMC) filed a motion to dismiss the complaint for lack of jurisdiction and failure to state a claim and by decision of September 29, 2006, the motion to dismiss was granted in part and denied in part. The following claims remained: (i) contempt for deliberate violation of the June 10, 1996 consent decree in Clarkson v. Coughlin, No. 91 Civ. 1792 (RWS) (the "Clarkson Consent Decree") as against Commissioner Fischer in his official capacity; (ii) the ADA and Rehab. Act claims against the Defendants in their official capacities for damages; and (iii) Smith's claims against D'Aloia (sued as Masterson) in her individual capacity alleging violations of 28 U.S.C. § 1983 under the Eighth Amendment and the Due Process and Equal Protection Clauses of the United States Constitution. See Smith v. Masterson, No. 05 Civ. 2897 (RWS), 2006 WL 2883009 (S.D.N.Y. Sept. 29, 2006).

The complaint against WCMC alleged medical malpractice in connection with treatment for a dislocated jaw.

Defendants filed motions for summary judgment on April 6, 2007 and June 19, 2007. After the Court received notice from Smith that some legal papers of his were damaged or destroyed by letter dated July 31, 2007, the Court sua sponte ordered

2

Defendants to re-serve their summary judgment motions and granted Smith an additional twenty days' extension to respond.

The instant motions were marked fully submitted on September 12, 2007 and included an appropriate notice to pro se litigant pursuant to Local Civil Rule 56.2. The motions were unopposed.

## The Facts

The Defendants have submitted Local Rule 56.1 Statements which have not been opposed by Smith and are therefore adopted. There are therefore no material facts in dispute. Pursuant to Vermont Teddy Bear Co, Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004), the Court has determined that the 56.1 Statements made by Defendants are supported by the evidentiary record.

## The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); SCS

3

Communs., Inc. v. Herrick Co., 360 F.3d 329, 338 (2d Cir. 2004);
see generally 11 James Wm. Moore, et al., Moore's Federal
Practice P 56.11 (3d ed. 1997 & Supp. 2004). The court will not
try issues of fact on a motion for summary judgment, but,
rather, will determine "whether the evidence presents a
sufficient disagreement to require submission to a jury or
whether it is so one-sided that one party must prevail as a
matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
251-52 (1986). Summary judgment is appropriate where the moving
party has shown that "little or no evidence may be found in
support of the nonmoving party's case. When no rational jury
could find in favor of the nonmoving party because the evidence
to support its case is so slight, there is no genuine issue of
material fact and a grant of summary judgment is proper." Gallo
v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24
(2d Cir. 1994) (internal citations omitted). "The party seeking
summary judgment bears the burden of establishing that no
genuine issue of material fact exists and that the undisputed
facts establish her right to judgment as a matter of law."
Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir.
1995).

        A material fact is one that would "affect the outcome
of the suit under the governing law," and a dispute about a

4

genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) ("[T]he mere existence of factual issues·-- where those issues are not material to the claims before the court -- will not suffice to defeat a motion for summary judgment.").

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

5

**The Claims Under the ADA and Rehabilitation Act Are Dismissed**

The Court previously held that:

The requirements for stating a claim under the ADA are virtually identical to those under § 504 of the Rehabilitation Act. Stated in the ADA's terms, a plaintiff is expected to show that (1) he or she is a qualified individual with a disability; (2) he or she is being excluded from participation in, or being denied the benefits of some service program, or activity by reason of his or her disability; and (3) the entity which provides the service, program or activity is a public entity.

Clarkson, 898 F. Supp. at 1037 (internal quotation marks and citations omitted); see also Allah v. Coord, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005) ("Section 504 of the Rehabilitation Act and Title II of the ADA are applicable to inmates in state prisons.").

Both the ADA and Rehabilitation Act define a "disabled individual" as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(2); see also Weixel v. Bd. of Educ. of the City of New York, 287 F.3d 138, 147 (2d Cir. 2002).

To determine if an individual meets any of the above criteria, courts apply a three part test first enunciated in Bragdon v. Abbott, 524 U.S. 624 (1998) and subsequently adopted by Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 641 (2d Cir. 1998). First, a plaintiff must first show that she suffers from a physical or mental impairment. See Colwell, 158 F.3d at 641. Second, the plaintiff must establish that the activity she alleges to be impaired constitutes a "major life activity." Id. Third, the plaintiff must show that her impairment "substantially limits" the major life activity previously identified. Id.; see also Weixel, 287 F.3d at 147.

The uncontroverted facts establish that Smith is not a qualified individual with a disability as he was not hearing impaired or deaf and, thus, never suffered from the "physical impairment" required under the first prong of the ADA/Rehab. Act test. The subjective and objective testing Smith received while in the custody of the New York State Department of Correctional Services ("DOCS") established that he is not hearing impaired despite a misdiagnosis in 1997.

On September 30, 1996, Plaintiff was given an Auditory Brainstem Response Evaluation (BERA) test which failed to

7

demonstrate hearing loss. This was followed by a consultation with an outside specialist, Dr. Devin Cunning, on October 7, 1996, who similarly determined that Plaintiff was not in need of any sort of reasonable accommodations.

On October 29, 1997, John Serhan, an Audiologist under contract with DOCS, gave Smith a subjective hearing test at which time it was determined that he was not hearing impaired but was, in fact, malingering, or attempting to deceive the test-taker.

According to the October 29, 1997 test results, Smith's subjective hearing levels ranged from 40 to 70dB in the right ear and no response to 90 dB in the left ear. While these numbers would normally indicate hearing impairment, the audiologist also noted that Smith consistently responded to conversation speech. If the test results were accurate, he should not have been able to hear conversational speech. As a result, special accommodations were not recommended by the audiologist for Plaintiff.

Following the October 29, 1997 hearing test, Smith continued to complain of hearing loss and was scheduled for another hearing test. On December 3, 1997, Smith was seen by

8

Keith Walsh of Adirondack Audiology Associates, P.C., an Audiologist under contract with DOCS. Id. At that time, Smith received both a subjective and objective hearing test.

Although subjectively, Smith appeared to be hearing impaired, objectively, he was determined to have normal hearing (normal threshold for right and left middle ear reflexes). Walsh nonetheless recommended that Smith be given bi-lateral hearing aids, which he subsequently received.

Smith was subsequently tested by John Serhan on January 20, 2000 and August 7, 2000, and determined not to be hearing impaired or in need of special accommodations. In fact, following the August 7 test, Serhan noted that he had observed Plaintiff speaking to the prison staff without any difficulty, which he would not have been able to do if he were hearing impaired.

On May 14, 2001, Smith was transported to WCMC for a Brainstem Auditory Evoked Potential (BAEP) examination to rule out hearing loss. The test determined that Smith has "[n]ormal brainstem auditory evoked potential study," and, thus, is not hearing impaired. (Ruben Decl. at ¶¶ 9, 10).

9

On February 27, 2004, Serhan gave Smith another hearing test, which against confirmed that Smith was not hearing impaired.

On March 3, 2005, Smith had another hearing test conducted by Serhan, which determined that he was not hearing impaired or in need of special accommodations.

On August 4, 2005, Serhan met again with Smith regarding his complaints of hearing loss and the need for hearing aids. Serhan explained to Smith that he is not hearing impaired and did not need reasonable accommodations and noted in his chart that he "cannot ethically or professional dispense," hearing aids to Plaintiff after both objective and subjective testing had determined that he was not hearing impaired or in need of hearing aids. (Med. Record at 1628). Serhan also noted that on numerous occasions he had observed Smith interacting normally with other people without difficulty, which would not have been possible if he were hearing impaired.

On November 15, 2005, Smith had another test in which he reported normal hearing in the right ear and no more than a mild loss in the left ear. On November 15, 2005, Smith received

10

a Stenger test, which is designed to reveal malingering, which was positive.

As noted above, Smith was at one time determined to be hearing impaired by Walsh, but subsequently found to have normal hearing by multiple independent medical specialists. This appears to be one of several cases where an inmate was erroneously determined to be hearing impaired by Walsh, but later determined to have normal hearing by other independent medical specialists. (D'Aloia Decl. ¶ 19). See also Arce v. O'Connell, 427 F. Supp. 2d 435, 442-43 (S.D.N.Y. 2006) (granting summary judgment in favor of New York State defendants when their expert -- also Dr. Ruben -- concluded that plaintiff had "no worse than mild to moderate" hearing loss despite previous "highly inconsistent" audiological tests, some of which indicated that plaintiff suffered severe hearing loss).

Accordingly, Plaintiff's ADA and Rehabilitation Act claims must be dismissed for lack of a qualifying disability. See Weixel, 287 F.3d at 147; Colwell, 158 F.3d at 641; see also Anderson, 477 U.S. at 248; Byrnie, 243 F.3d at 101; Scotto, 143 F.3d at 114.

## D'Aloia Was Not Deliberately Indifferent

In order to establish an Eighth Amendment violation "arising out of inadequate medical treatment, a prisoner is required to prove 'deliberate indifference to serious medical needs.'" Cherry v. Edwards, No. 01 Civ. 7886 (FM), 2005 WL 107095, at *7 (S.D.N.Y. Jan. 18, 2005) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The deliberate indifference standard "'consists of both an objective and a subjective prong.'" Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

Under the objective prong "the alleged medical need must be 'sufficiently serious.' A 'sufficiently serious' medical need is one that produces 'a condition of urgency . . . that may produce death, degeneration or extreme pain.'" Cherry, 2005 WL 107095, at *7 (quoting Hathaway, 37 F.3d at 66).

Under the subjective prong, the "prisoner must demonstrate that the defendants acted with a 'sufficiently culpable state of mind' in depriving the prisoner of medical treatment." Id. (quoting Hathaway, 37 F.3d at 66). This prong "entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of

12

causing harm or with the knowledge that harm will result.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). Thus, to meet the subjective prong of the test, "an official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Hathaway, 37 F.3d at 66.

Further, as this Court has previously noted, it is "the particular risk of harm faced by a prisoner due to challenged deprivation of care, rather than the prisoner's underlying medical condition considered in the abstract, that is relevant for Eighth Amendment purposes.'" Degrafinreid v. Ricks, 417 F. Supp. 2d 403, 412 (S.D.N.Y. 2006) (quoting Smith v. Carpenter, 316 F.3d 178, 186 (2d Cir. 2003).

While the ability to hear is "a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians," id., this record has established that Smith has normal hearing and was not in need of the hearing aids he inappropriately received, nor any other accommodations.

Furthermore, Smith has not established that D'Aloia had a sufficiently culpable statement of mind to satisfy the subjective prong of the deliberate indifference analysis.

13

D'Aloia relied on the opinions of medical professionals when she determined that Smith was not hearing impaired and did not require accommodations. (D'Aloia Decl. at ¶¶ 8-25). Under these circumstances, relying on the medical evidence indicating that Smith was not hearing impaired was entirely reasonable and D'Aloia lacked the requisite culpability.

## The Claim for Injunctive Relief is Moot

"In order for a federal court to retain jurisdiction over a case, an actual controversy must exist at all stages of review, not merely at the time the complaint is filed." Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (quoting Preiser v. Newkirk, 422 U.S. 395, 402 (1975) (internal quotation marks omitted). Additionally, "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." Id.

In this case, Smith's claim for injunctive relief as to Defendants Rodas and Ercole must be dismissed as Plaintiff is no longer incarcerated at Green Haven Correctional Facility ("Green Haven"). (Inmate Transfer History attached to the Rodas Aff. as Ex. A).

14

## The Equal Protection and Due Process Clauses Were Not Violated

In his Complaint, Smith alleged that the Defendants intentionally treated him differently from another inmate named Larry Randall who has received reasonable accommodations for his hearing impairment. Based on this alleged disparity in treatment, Smith contends that, as a "class of one," his rights under the Equal Protection Clause have been violated. (Complaint ¶ IV(4)).

In order to state a "class-of-one" equal protection claim, "a plaintiff must show that he 'has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Gordon v. Woodbourne Corr. Facility, 481 F. Supp. 2d 263, 273 (S.D.N.Y. 2007) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). In this analysis, "the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Id. (quoting Nielsen v. D'Angelils, 409 F.3d 100, 105 (2d Cir. 2005).

> A court may grant summary judgment in a defendant's favor on the basis of lack of similarity of situation . . . where no reasonable jury could find that the persons to whom the plaintiff compares itself are similarly situated.

15

Id. (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006).

Because Smith is not hearing impaired, he cannot establish that he is similarly situated to Larry Randall, who suffers from "severe bilateral sensorineural hearing loss in both ears." Clarkson, 898 F. Supp. at 1032.

A "failure to provide qualified interpreters or other needed assistive devices for medical and mental health treatment and disciplinary, grievance and parole proceedings," as alleged by Smith, constitutes a denial of procedural due process protections. Clarkson, 898 F. Supp. at 1042. However, because Smith is not hearing impaired, there is no dispute that he did not require such accommodations in order to "invoke or fully participate in various proceedings to protect [his] rights while incarcerated." Id. at 1038.

## The Clarkson Contempt Claim is Dismissed

A Plaintiff "who is not a party to or a member of the class protected by a consent decree has no standing to bring a motion for contempt alleging violations of the decree." Arce, 427 F. Supp. 2d at 441. Responding to a summary judgment motion, "the party invoking federal jurisdiction must establish standing by setting forth specific evidence sufficient to raise a genuine issue of material fact." Id.

In this case, the record demonstrates that Smith is not hearing impaired and is not a member of the Clarkson Class. Smith therefore lacks standing to seek contempt of the Clarkson Consent Decree.

## The Medical Malpractice Claim is Dismissed

The gravamen of Plaintiff's complaint is that WCMC failed to perform an eminectomy on September 27, 2004 and in its stead WCMC performed a bilateral manipulation of Smith's jaw under general anesthesia. As a result, Smith alleged pain and a worsening of his complaints.

17

Under New York law, "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact." Alvarez v. Pospect Hospital, 68 N.Y.2d 320, 324 (1986). Upon such a showing, the burden shifts to the plaintiff to "submit evidentiary facts or materials to rebut the prima facie showing by the defendant physician that he was not negligent in treating plaintiff so as to demonstrate the existence of a triable issue of fact." Id. Plaintiff must establish (1) a duty of care flowing from the defendant-physician to the plaintiff-patient (2) a breach of that duty and (3) some injury to the plaintiff proximately caused by the breach of that duty. Pace v. Jakus, 291 A.D.2d 436, 437 (N.Y. App. Div. 2002).

In support of WCMC's position, an affidavit by Dr. Geldzahler ("Geldzahler"), a Board Certified Oral Maxillary Surgeon, has been submitted attesting that the WCMC did not depart in any manner in its care and treatment of Smith, that he, as Smith's treating physician on September 27, 2004, did not find any objective medical evidence supporting Smith's contention that an eminectomy should have been performed. (WCMC Ex. G). While Smith was under general anesthesia, Geldzahler found a completely normal range of motion and positioning and

18

did not depart from accepted standards of medical treatment. (Id.) There was no medical indication, no objective medical evidence, to support performing the surgical procedure, an eminectomy, based upon the Smith's presentation at that time. (Id.)

The consent form, dated September 27, 2004, and signed by Smith, attested to his knowledge of the manipulation procedure. This evidence directly refutes Smith's contention that he believed he was going to undergo an eminectomy on that date. Furthermore, even had Smith preferred to undergo an eminectomy, that does not establish that there was a departure on behalf of WCMC. See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) (holding that "mere disagreement over the proper treatment does not create a constitutional claim").

"In a medical malpractice action, expert medical opinion evidence is required to demonstrate merit." Daponte v. Weber, 134 A.D.2d 319, 319 (N.Y. App. Div. 1987). Smith's failure to submit an affidavit of merit by a medical expert as to the claims of medical malpractice requires the dismissal of the action against the defendant. See id.

19

In addition, Smith has failed proffer expert support in his cause of action for lack of informed consent, which is fatal to his claim. See Gonzalez v. Moscarella, 142 A.D.2d 550, 551-52 (N.Y. App. Div. 1988).

Smith has failed to state a cause of action for medical malpractice or that WCMC deviated from acceptable care and treatment of Smith or caused a cognizable injury to him.

## Conclusion

For the foregoing reasons, the motions for summary judgment are granted and the complaint dismissed as to the Defendants. There are likewise no material facts preventing judgment from being entered in favor of defendant Ramani, the complaint is also dismissed as to Ramani.

Submit judgment on notice.

It is so ordered.

**New York, N.Y.**
**March  6  , 2008**

**ROBERT W. SWEET**
**U.S.D.J.**